<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTONIO CRINCOLI,<br><br>Plaintiff,<br><br>v.<br><br>GEICO INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-03380 (BRM) (JRA)<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Lyft Inc.'s ("Lyft") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 115.) Co-Defendant Geico Insurance Company ("Geico") filed an Opposition on February 29, 2024. (ECF No. 116.) Lyft filed a reply on March 14, 2024. (ECF No. 122[1].) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Lyft's Motion for Summary Judgment is **GRANTED**.

## I.   BACKGROUND

### A.   Factual Background

This case arises from an alleged motor vehicle collision with a pedestrian on July 7, 2018 in Jersey City, New Jersey. (ECF No. 115-3 ¶ 1 (citing ECF No. 115-6 Exs. A, B, G, H, I, K, L);

---

[1] Plaintiff did not make any filings related to the motion. Defendants Rasier LLC ("Rasier"), Rasier CA LLC ("Rasier CA"), Rasier DC LLC ("Rasier DC"), John/Jane Doe (the fictitiously named unknown driver/owner), John Doe 1–10 (fictitiously named), and ABC Co. 1–10 (fictitiously named) did not participate in this motion.

ECF No. 116 ¶ 6; ECF No. 24 at 4.) Plaintiff claims he and a friend, Andrew Vega ("Vega"), were walking home on the night of July 7, 2018 after having drinks when he was struck by a vehicle at the intersection of Seventh Street and Marin Boulevard in Jersey City. (ECF No. 116 ¶ 6; ECF No. 122-1 ¶ 6.)

Plaintiff originally alleged the vehicle which struck him had Lyft and Uber placards in its windshield. (ECF No. 115-3 ¶ 2 (citing ECF No. 24 at 1); ECF No. 116 ¶ 2.) However, Plaintiff, in his deposition, stated only that he saw a "lit up placard" for a rideshare company, but did not know what color it was, or what company it was for. (ECF No. 122-1 ¶ 7 (citing ECF No. 115-6 Ex. C ("Crincoli Dep.") at 63:16–19; 63:20–24.)) Vega testified that he saw both Uber and Lyft placards on the windshield of the vehicle that struck Plaintiff but could not recall whether either placard was illuminated. (ECF No. 122-1 ¶ 7 (citing ECF No. 115-6 Ex. D ("Vega Dep.") 37:6–9; 37:19–25.)) Plaintiff claims the accident happened around "2:30 am," whereas Vega alleges the accident occurred "around either 12 or 1 in the morning." (ECF No. 116 ¶ 7 (citing Crincoli Dep. at 47; Andrew Vega Dep. at 27); ECF No. 122-1 ¶ 7.) Plaintiff and Vega also differ in their description of the vehicle itself, with Plaintiff identifying the vehicle as a Toyota Camry, and Vega claiming the vehicle was a Nissan Maxima. (ECF No. 116 ¶ 9 (citing Crincoli Dep. at 60; Vega Dep. at 36–37); ECF No. 122-1 ¶ 9.) Plaintiff recalled the vehicle having a New York license plate with the letters "TL," whereas Vega did not recall any details about the license plate. (ECF No. 116 ¶ 10 (citing Crincoli Dep. at 65; Vega Dep. at 77); ECF No. 122-1 ¶ 10.) Plaintiff reported a "hit and [r]un" accident to Lyft on July 9, 2018, but provided no further details regarding the accident. (ECF No. 116 ¶ 12 (citing ECF No. 116-5); ECF No. 122-1 ¶ 12 (citing ECF No. 116-5.)) Plaintiff alleges that, as a result of the impact with the car, he was tossed up on the hood, rolled

over the "A" pillar near the driver's door, and fell to the ground. (ECF No. 116 ¶ 11 (citing Crincoli Dep. at 67); ECF No. 122-1 ¶ 11.)

Lyft submitted a certification by Marybeth Rice ("Rice") stating that Lyft had no record (ECF No. 116 ¶ 13; ECF No. 116-7 ¶ 9) of a "silver, gray or light-colored four-door Nissan with New York livery plates" (*id.* ¶ 6) being present at "6th Street, Thomas Gangemi Drive, and Marin Boulevard in Jersey City, New Jersey" (*id.* ¶ 4) between 2:00 am and 2:30 am (*id.*). Plaintiff is unable to identify the specific driver involved in the alleged accident, although GPS data indicates 157 Lyft drivers whose cell phones were within 100 feet of the alleged accident location sometime between 12:00 am and 3:00 am. (ECF No. 122-1 ¶ 15 (citing ECF No. 115-6 Ex. G); *id.* ¶ 18 (citing ECF No. 115-6 Exs. G, I ¶ 6, J at 36:1–37:2.)) The data does not show whether any vehicles stopped for any period of time after making a left turn at the intersection, whether a vehicle had any passengers, whether a vehicle was involved in an accident, or whether a Lyft driver was actually driving or in the vehicle. (ECF No. 122-1 ¶ 18 (citing Klingen Dep. at 61:14–62:7, 62:14–18, 62:19–63:1, 65:21–66:2, 67:12–25, 69:2–9, 69:10–18, 71:8–15, 73:1–5, 73:9–16.))

### B. Procedural Background

This case was removed from the Superior Court of New Jersey, Law Division, Hudson County on March 27, 2020. (ECF No. 1.) Plaintiff submitted an Amended Complaint on December 15, 2020, bringing claims (1) against Lyft, Uber Technologies, Inc. ("Uber"), Rasier, Rasier CA, and Rasier DC for damages arising from a motor vehicle collision at the intersection of Marin Boulevard and 6th Street in the City of Jersey City, Hudson County, New Jersey; (2) against Geico for failure to pay Plaintiff's Personal Injury Protection Benefits arising from the accident; (3) against Lyft, Uber, Rasier, Rasier CA, Rasier DC, John/Jane Doe (the fictitiously named unknown driver/owner), John Doe 1–10 (fictitiously named), and ABC Co. 1–10 (fictitiously named) for

failure to pay Plaintiff's Personal Injury Protection Benefits arising from the accident; and (4) against Geico for failure to pay Plaintiff's Uninsured Motorist Benefits arising from the accident. (ECF No. 24.) Lyft and Uber each filed Motions for Summary Judgment on March 25, 2022. (ECF Nos. 49; 50.) On August 31, 2022, the Court granted Uber's Motion for Summary Judgment, and denied Lyft's Motion for Summary Judgment. (ECF No. 69.) On February 15, 2024, Lyft filed its present Motion for Summary Judgment. (ECF No. 115.) Geico filed an Opposition on February 29, 2024. (ECF No. 116.) Lyft filed a reply on March 14, 2024. (ECF No. 122.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument

4

alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Moreover, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [their] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson,* 477 U.S. at 248, 255).

If the moving party bears the burden of persuasion at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999); *see also id.* at 553 n.9 (noting "summary judgment is rarely granted in a plaintiff's favor in cases where the issue is a defendant's racial motivation, such as disparate treatment suits under Title VII or racial discrimination claims under 42 U.S.C. § 1981"). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III.   DECISION

### A.   Briefing

Lyft argues Plaintiff is unable to identify the alleged tortfeasor or the vehicle that allegedly hit him, meaning he cannot show the tortfeasor had any relationship with Lyft or that the tortfeasor was acting in the scope of that relationship. (ECF No. 115-4 at 7.) Lyft also claims Plaintiff is unable to show Lyft's direct negligence as he cannot identify the vehicle which hit him beyond vague recollections of the vehicle being a Toyota or Nissan. (*Id.*) Lyft asserts that it does not have

6

a duty to disprove Plaintiff's claims, and that it "has no information in its possession, custody, or control that indicates any Lyft user was involved in an auto accident at the location where Plaintiff alleges the subject accident took place during the three-hour timeframe he identified." (*Id.* at 8.) Therefore, Lyft claims Plaintiff cannot present any evidence showing a relationship between Lyft and the driver involved in the purported accident. (*Id.* at 9.)

Geico argues Plaintiff has sufficient evidence to permit a jury to infer the vehicle involved in the accident was a Lyft vehicle. (ECF No. 116 at 11.) Geico claims Rice's certification that Lyft did not have any vehicles matching Plaintiff's description at the intersection during the time of the accident is contradicted by subsequent discovery showing that 157 Lyft vehicles matching the description of Plaintiff and Vega were in the intersection at the time of the accident. (*Id.* at 7–8.) Geico argues this contradiction creates a credibility issue for Rice's declaration that must be resolved by a jury. (*Id.* at 8.) Geico further argues that the GPS evidence and Vega's deposition testimony provide support that it was a Lyft vehicle involved in the accident. (*Id.* at 12.) Geico asserts that GPS evidence shows multiple vehicles matching Plaintiff and Vega's descriptions in the intersection at the time of the accident, including several vehicles which executed left turns. (*Id.* at 9–10.) Geico claims Vega's testimony that the vehicle appeared to have passengers and a rideshare placard tends to show the vehicle was in use as a rideshare vehicle. (*Id.* at 12–13.) Finally, Geico also asserts the New Jersey Transportation Network Company Safety and Regulatory Act ("NJTNCA"), which applies to transportation network companies and their drivers, requires that insurance maintained by the company shall provide necessary coverage where the driver does not themselves maintain insurance. (*Id.* at 13.) Geico argues that "[t]he act is designed to provide the broadest protection for people injured by rideshare vehicles and neither the act, nor case law,

requires that the name or identity of the rideshare driver be identified as a prerequisite for responsibility by the rideshare company." (*Id.*)

Lyft argues Rice's certification is not contradicted by subsequent discovery, as it focused on the narrow 2:00 am to 2:30 am timeframe claimed by Plaintiff. (ECF No. 122 at 3.) Lyft claims this representation was not contradicted by Plaintiff's analysis of the evidence, which only identified four potential vehicles travelling through the intersection between 12:49 am and 1:14 am. (*Id.* at 3–4.) Lyft also argues that, to the extent Rice's certification was inaccurate, this is because it was created before discovery took place and Lyft obtained additional information which allowed it to conduct additional searches. (*Id.* at 3.) Ultimately, Lyft did not identify any vehicles active on the Lyft platform at the time of the accident, rather, it only identified the cellphones of Lyft drivers in the area, a limitation acknowledged by Plaintiff's expert Klingen. (*Id.* at 3–4.) Lyft also claims it never received an accident report from the purported driver or passengers of the vehicle. (*Id.* at 4.) Lyft further argues that Klingen's expert report did not necessarily identify four vehicles which made a left turn at the intersection, as the data Klingen analyzed was of driver cellphones, not of actual vehicles. (*Id.* at 4–5.) Klingen also testified his analysis did not show any of the vehicles stopped at the intersection, thereby failing to corroborate both Plaintiff's and Vega's testimony. (*Id.* at 5.) Lyft also asserts Klingen failed to identify whether any vehicle was involved in an accident or whether any Lyft driver was in a vehicle. (*Id.*) As to Vega's testimony, Lyft argues that although Vega saw a Lyft placard in the vehicle, Vega's testimony fails to show the driver of the vehicle was acting in the scope of his duties for Lyft. (*Id.* at 6.) Lyft further claims Vega's allegations of passengers in the back of the vehicle fails to allege the vehicle was a Lyft vehicle, as the driver could have been working for many other rideshare and taxi companies. (*Id.*) Finally, Lyft argues the NJTNCA is inapposite as it does not create an independent cause of action

8

against a transportation network company, but rather deals with insurance coverage requirements for such companies. (*Id.* at 7.)

### B.  Legal Questions

Before assessing the sufficiency of Plaintiff's affirmative case, the Court first considers certain legal issues raised by the briefing. The Court begins with (1) *sua sponte* considering the permissibility of Geico filing an Opposition to this motion in lieu of Plaintiff, before (2) considering whether the NJTNCA modifies the burden of proof for Plaintiff's claims, and (3) assessing if Rice's Declaration raises a credibility issue that precludes summary judgment against Plaintiff. The Court ultimately finds Geico is likely barred from filing an Opposition in lieu of Plaintiff (but considers the Opposition despite this precedent), and that the NJTNCA and potential credibility issues from Rice's Declaration do not preclude summary judgment against Plaintiff.

### 1.  Permissibility of Co-Defendant Filing Opposition in Lieu of Plaintiff

The Court considers, *sua sponte*, whether Geico has standing as a co-defendant to oppose Lyft's motion, as no cross-claims are pending in this action between Geico and Lyft, and Plaintiff has not himself opposed the motion. If Geico does not have standing, the motion is unopposed. *See Rodriguez-Melendez v. Dauphin Cnty. Drug Task Force*, Civ. A. No. 14-00012, 2016 WL 4150028, at *3 (M.D. Pa. July 8, 2016) (finding motion for summary judgment to be unopposed where plaintiff failed to submit opposition); *Laroce v. M Fortuna Roofing*, Civ. A. No. 14-7329, 2017 WL 431768, at *3 (D.N.J. Jan. 31, 2017) ("[I]n an unopposed motion, a movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts ('SUMF') receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion."); *Hickox v. Novosel*, Civ. A. No. 20-02241, 2021 WL 6197748, at *3 (M.D. Pa. Dec. 31, 2021) ("In this case, Hickox has failed to submit any opposition to Novosel's motion for summary judgment.

Therefore, the motion will be deemed unopposed."). If the Court deems the motion to be unopposed, the moving party's statement of material facts are presumed to be admitted for purposes of the motion. *See Laroce*, 2017 WL 431768, at *3; *Fiori-Lacivita v. Franco-Palacios*, Civ. A. No. 16-4445, 2019 WL 6255783, at *1 (D.N.J. May 7, 2019) ("[d]efendants' statements of material facts not in dispute, as to which Plaintiff has filed no objection and counter statement, are deemed undisputed for the purposes of these summary judgment motions."); *Ruth v. Selective Ins. Co. of Am.*, Civ. A. No. 15-2616, 2017 WL 592146, at *3 (D.N.J. Feb. 14, 2017) ("Further, in an unopposed motion, a movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts ('SMF') receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion."). Nonetheless, "The Court must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is 'appropriate,' as required by Rule 56(e)." *Muskett v. Certegy Check Servs., Inc.*, Civ. A. No. 08-3975, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010); *see also Loveland v. Owens*, Civ. A. No. 16-2778, 2017 WL 6450704, at *2 (D.N.J. Dec. 15, 2017) ("The Court still must determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is appropriate."); *Robbins v. U.S. Foodservice, Inc.*, Civ. A. No. 11-4599, 2012 WL 3781258, at *3 (D.N.J. Aug. 30, 2012) (same).

Although caselaw on the issue of whether a co-defendant may oppose a summary judgment motion in lieu of a plaintiff is limited, the courts that have considered the issue have found co-defendants do not have standing to oppose summary judgment without asserting cross-claims. *See Metcal v. Pierce*, Civ. A. No. 11-0127, 2013 WL 3322357, at *2 (M.D. Pa. July 1, 2013) ("[T]he respective courts found that the co-defendant opposing summary judgment had no standing to file

an opposition to summary judgment where plaintiff had not done so and the co-defendant had no pending cross-claims."); *Blonder v. Casco Inn Residential Care*, Civ. A. No. 99-274, 2000 WL 761895, at *1 (D. Me. May 4, 2000) (finding co-defendant could not be the sole successful opposition to another co-defendant's motion for summary judgment where plaintiff had stated she no longer wished to pursue her claims, as "[r]equiring Plaintiff to prosecute her claims against Defendants . . . when she no longer believes such claims to be viable would be contrary to the principle of Rule 56 that trials (or portions thereof) should be avoided when appropriate"); *Eckert v. City of Sacramento*, Civ. A. No. 07-00825, 2009 WL 3211278, at *3 (E.D. Cal. Sept. 30, 2009) ("[S]ince there is no crossclaim between the Defendants, Union Pacific and the City are not adverse parties and the City therefore does not have standing to oppose Union Pacific's motion for summary judgment. The City's arguments opposing Union Pacific's motion will therefore not be considered."). Therefore, Geico likely does not have standing to oppose Lyft's motion for summary judgment in lieu of Plaintiff.

However, the Court will nonetheless consider Geico's Opposition to the motion, as the precedent is not clear that Geico lacks standing where, as here, the Plaintiff has indicated no intent to abandon his claims, and because it is unclear if the Court may raise this issue *sua sponte*. *Blonder* was decided, in part, based on the plaintiff's affirmative filing indicating no objection to the defendants' motion for summary judgment. *Blonder*, 2000 WL 761895, at *1; *see also Thurman v. Wood Grp. Prod. Servs.*, Civ. A. No. 09-4142, 2010 WL 5207587, at *1 (E.D. La. Dec. 14, 2010) (finding co-defendant did not have standing to oppose motion for summary judgment where plaintiff had filed "Memorandum of No Opposition"); *Eckert*, 2009 WL 3211278, at *3 (same). Here, Plaintiff has not made an affirmative filing indicating no objection to the motion for summary judgment, potentially distinguishing this case from prior cases holding co-defendants to

not have standing. Moreover, because courts have previously found co-defendants lack standing under Federal Rule of Civil Procedure 56, rather than under Article III of the United States Constitution, it is possible that Lyft waived the issue of Geico's standing by failing to raise the issue in its pleading. *See Blonder*, 2000 WL 761895, at *1 (finding co-defendant did not have standing to oppose motion for summary judgment based on "principles underlying Rule 56"); *Thurman*, 2010 WL 5207587, at *1 (same); *Potter v. Cozen & O'Connor*, 46 F.4th 148, 156 (3d Cir. 2022) ("On other occasions, too, the Court has held that, while defects in Article III jurisdiction can never be waived, even when parties fail to raise them, the same is not true of issues related to the third-party standing doctrine."). The Court further notes that there is no binding case requiring it to disregard Geico's Opposition, rather, there is only persuasive precedent. Ultimately, the issue of Geico's standing is not dispositive of the motion, as the Court grants Lyft's motion for summary judgment on the merits, as discussed below. In particular, Geico's Statement of Material Facts does not significantly change the Court's analysis as the Court finds that, even considering Geico's statement, Plaintiff still fails to raise a genuine issue of material fact.

Therefore, although Geico likely does not have standing to oppose Lyft's motion for summary judgment, the Court will consider Geico's Opposition due to the uncertain and non-binding status of the caselaw. *Cf. Cole v. Wells Fargo Bank*, Civ. A. No. 12-1932, 2016 WL 1242765, at *3 n.2 (D.N.J. Mar. 30, 2016) (exercising court's discretion to consider late-filed opposition to motion for summary judgment, despite the opposition being filed in violation of the Local Civil Rules); *H.G. v. Audobon Bd. of Educ.*, Civ. A. No. 05-4220, 2007 WL 173850, at *1–2 (D.N.J. Jan. 19, 2007) (same); *Jackson v. Midland Funding, LLC*, Civ. A. No. 09-6028, 2012 WL 2369398, at *2 n.1 (D.N.J. June 20, 2012) (same).

## 2.     Burden of Proof Under the NJTNCA

Geico asserts the NJTNCA, which applies to transportation network companies and their drivers, requires that insurance maintained by the company shall provide necessary coverage where the driver does not themselves maintain insurance. (ECF No. 116 at 13.) Geico argues that "[t]he act is designed to provide the broadest protection for people injured by rideshare vehicles and neither the act, nor caselaw, requires that the name or identity of the rideshare driver be identified as a prerequisite for responsibility by the rideshare company." (*Id.*) Geico therefore claims that Plaintiff need not identify the specific rideshare vehicle which collided with him to recover under the NJTNCA, rather, Geico argues the statute allows Plaintiff to assert a general claim against Lyft. (*Id.*)

Lyft argues the NJTNCA is inapposite as it does not create an independent cause of action against a transportation network company that does not require the identification of the rideshare driver, but rather deals with general insurance coverage requirements for transportation network companies. (ECF No. 122 at 7.)

The NJTNCA does not modify Plaintiff's burden of persuasion in this case, as the statute deals with terms of service and does not create an independent cause of action against transportation network companies. Although this is a relatively novel argument, this court has previously held that the NJTNCA does not impact tort liability for rideshare companies. *Hoffman v. Silverio-Delrosar*, Civ. A. No. 20-13291, 2021 WL 6091107, at *6 (D.N.J. Dec. 23, 2021) (finding that the NJTNCA does not impact tort liability for rideshare companies and does not modify existing common law duties); *Hoffman v. Silverio-Delrosar*, Civ. A. No. 20-13291, 2021 WL 2434064, at *4 (D.N.J. June 15, 2021) (same). The NJTNCA regulates insurance coverage

and terms of service for transportation network companies without changing the burden of proof for auto accidents involving such companies. *See generally* N.J. Stat. Ann. § 39:5H-1–27.

Therefore, the NJTNCA does not preclude summary judgment against Plaintiff.

### 3.     Potential Credibility Issues Stemming from Rice's Declaration

Geico claims Rice's certification that Lyft did not have any vehicles matching Plaintiff's description at the intersection during the time of the accident is contradicted by subsequent discovery showing that 157 Lyft vehicles matching the description of Plaintiff and Vega were in the intersection at the time of the accident. (ECF No. 116 at 7–8.) Geico argues this contradiction creates a credibility issue for Rice's declaration that must be resolved by a jury. (*Id.* at 8.) Geico therefore claims that summary judgment must be denied on this basis alone, without the Court reaching the sufficiency of Plaintiff's evidence on the claims. (*Id.*)

Lyft argues Rice's certification is not contradicted by subsequent discovery, as it focused on the narrow 2:00 am to 2:30 am timeframe claimed by Plaintiff. (ECF No. 122 at 3.) Lyft claims this representation was not contradicted by Plaintiff's analysis of the evidence, which only identified four potential vehicles travelling through the intersection between 12:49 am and 1:14 am. (*Id.* at 3–4.) Lyft also argues that, to the extent Rice's certification was inaccurate, this is because it was created before discovery took place and Lyft obtained additional information which allowed it to conduct additional searches. (*Id.* at 3.)

Rice's declaration does not create a credibility issue that precludes summary judgment, as the declaration is not directly contradicted by subsequent discovery. Rice's declaration states that Lyft has no record of a "silver, gray or light-colored four-door Nissan with New York livery plates" (ECF No. 51-8 ¶ 6) being active on the Lyft platform "at the time and location of the accident" (*id.* ¶ 9) based on Plaintiff's allegation the accident occurred "between 2:00am and 2:30am" (*id.* ¶ 4).

Plaintiff's accident reconstruction analyst only identified four potential vehicles travelling through the intersection between 12:49 am and 1:14 am. (ECF No. 116-1 at 4–5.) Rice's declaration is therefore not directly contradicted by Lyft's subsequent discovery, as the declaration only focused on vehicles in the intersection between the times of 2:00 am and 2:30 am. (ECF No. 51-8 ¶ 9.)

Even if the Court did find a credibility issue with Rice's declaration, the Court would still find this issue does not preclude summary judgment, as courts may grant summary judgment motions despite minor credibility disputes which do not implicate material facts. *See Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) ("It is by now axiomatic that 'a nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect.'" (quoting *Williams*, 891 F.2d at 460)); *Shah v. Bank of Am.*, 598 F. Supp. 2d 596, 603 (D. Del. 2009) (same) (quoting *Schoonejongen*, 143 F.3d at 130); *Gosse v. Transworld Sys.*, Civ. A. No. 20-1446, 2023 WL 7926828, at *10 (M.D. Pa. Sept. 29, 2023) ("Gosse does not explain how irregularities that may have taken place after 2008 undermine the slight showing necessary to authenticate documents produced in September of 2007. Instead, Gosse simply invites us to speculate that such irregularities exist. We should decline this invitation."). In this case, Plaintiff has not made any specific allegation regarding dishonest intent against Rice, nor would any credibility determination regarding Rice's testimony counteract Plaintiff's failure to substantiate its affirmative case with non-speculative evidence regarding Lyft's control of the driver.

Therefore, the Court finds Rice's declaration has not been contradicted by subsequent discovery and any potential credibility dispute regarding Rice's declaration is not sufficiently substantial to preclude summary judgment against Plaintiff.

### C.    Genuine Issue of Material Fact

Having found the NJTNCA does not modify Plaintiff's burden of proof and Rice's Declaration does not create a credibility issue precluding summary judgment, the Court will proceed to assess the sufficiency of Plaintiff's evidence under general tort law doctrine for negligence and *respondeat superior*. The Court begins by (1) examining the applicable law to the case, before assessing whether (2) Plaintiff's and Vega's deposition testimony and (3) the GPS data create a genuine issue of material fact on the elements of a *respondeat superior* based negligence claim. The Court ultimately finds that neither the deposition testimony nor the GPS data creates a genuine issue of material fact as both pieces of evidence fail to raise more than a speculative possibility of Lyft's involvement in the accident. The Court further notes that its analysis of whether Plaintiff's evidence raises a genuine dispute of material fact would be substantially the same had it not considered Geico's Opposition, as the Court would still find the evidence insufficient to meet Plaintiff's burden had it not considered the Opposition.

### 1.    Applicable Law

A non-moving party may not oppose a motion for summary judgment "by resorting to speculation, or statements of personal opinion or mere belief." *Martin v. Unknown United States Marshals*, 965 F. Supp. 2d 502, 527 (D.N.J. 2013); *see also Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 624 (D.N.J. 2023) (holding plaintiff's argument that "a jury can infer scienter based on Brown's (and Papa's) attendance at pharmaceutical industry conferences attended by Perrigo's competitors" to be speculative because "beside her mere presence at those conferences, Plaintiffs—after years of discovery—offer no evidence on who Brown spoke to, what was said about generic drug pricing (if any), or what she heard at those conferences"); *Jennings v. J.C. Penney Corp., Inc.*, Civ. A. No. 13-4390, 2015 WL 5167092, at *5 (D.N.J. Sept. 3, 2015) (finding

no genuine dispute of material fact as to defendant's negligence as "the evidence in the record demonstrates that neither Plaintiff nor her mother could find any object or substance on the floor where Plaintiff slipped, there was nothing on Plaintiff's flip-flop after she fell, and the incident report indicates that the floor was clear and dry"). Therefore, the non-moving party may not rely on "opinions or conclusions" to create a genuine dispute of material fact. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002). It is insufficient for the non-moving party to speculate or opine on the evidence in the record, rather, the non-moving party must have some concrete evidence which creates a genuine dispute of material fact. *See Trainer v. Cnty. of Del.*, Civ. A. No. 23-1940, 2024 WL 2832446, at *6 (E.D. Pa. June 3, 2024) ("Plaintiff's only proffered 'evidence' that Colucci was involved in her hiring process is her speculation that merely because Rhoades and Colucci were 'friendly,' Colucci must have convinced Rhoades not to hire her. However, there is not a shred of evidence in the record to support this assertion."); *Truinject Corp. v. Galderma S.A.*, Civ. A. No. 19-00592, 2023 WL 6540232, at *12 (D. Del. Sept. 26, 2023) ("Truinject asks the Court, and the jury, to speculate as to Defendants' internal testing procedures. Speculation is not sufficient to create a triable issue."); *In re Asbestos Prods. Liab. Litig.*, Civ. A. No. 10-174, 2014 WL 6988692, at *2 (D. Del. Dec. 9, 2014) ("Thus, the Plaintiff only offers the possibility that Pavlick worked on AM General vehicles in Fulda, but mere speculation is insufficient to raise a genuine dispute of material fact.").

"In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: '(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]'" *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (N.J. 2008) (alterations in original) (quoting *Weinberg v. Dinger*, 524 A.2d 366, 374 (N.J. 1987)). "The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care." *Holmes v. Kimco*

*Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). "Under New Jersey law, 'whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.'" *Id.* (quoting *Monaco v. Hartz Mountain Corp.*, 840 A.2d 822, 833 (N.J 2004)).

When asserting a tort action against an employer for the negligence of an employee, the plaintiff "must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Ceneviva v. Homes*, Civ. A. No. 09-2452, 2011 WL 2470596, at *5 (D.N.J. June 20, 2011) (quoting *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003)); *DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1046 (D.N.J. 2011) (same) (quoting *Wiatt v. Winston & Strawn, LLP*, Civ. A. No. 10–6608, 2011 WL 2559567, at *8 (D.N.J. June 27, 2011)); *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 368–69 (D.N.J. 2013) (same) (quoting *Carter*, 815 A.2d at 463). In the case of a driver for a rideshare company, a plaintiff must therefore present evidence that the driver was acting in the scope of their employment for the rideshare company, meaning the complained of acts are "so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Hoffman*, 2021 WL 2434064, at *2 (quoting *Davis v. Devereux Found.*, 37 A.3d 469, 489 (N.J. 2012)); *see also Fusco v. Uber Techs., Inc.*, Civ. A. No. 17-00036, 2018 WL 3618232, at *10 (E.D. Pa. July 27, 2018) ("Plaintiff's Complaint does not allege how the driver's attack—in which the driver dragged Plaintiff out of the car, kicked him, and beat him—was motivated by a purpose to serve Defendant.").

In this case, the Court will assess whether Plaintiff has proffered concrete evidence that the driver of the vehicle which collided with him had a master-servant relationship with Lyft and was

acting under the scope of this relationship at the time of the accident. To meet this burden, it is insufficient for Plaintiff to speculate regarding the presence of Lyft drivers in the intersection at the time of the accident. *Martin*, 965 F. Supp. 2d at 527; *see also Roofer's Pension Fund*, 687 F. Supp. 3d at 624; *Jennings*, 2015 WL 5167092, at *5. Rather, at this stage, Plaintiff must present credible evidence identifying a specific Lyft driver involved in the accident. *See Garcia ex rel. Est. of Acosta-Garcia*, 428 F. App'x 706, 708–09 (9th Cir. 2011) ("Neither did the district court abuse its discretion when it denied Maria leave to amend the complaint to identify the Doe defendants. Maria had ample opportunity prior to the time defendants moved for summary judgment to conduct reasonable discovery, identify these defendants, and seek leave to amend the complaint."); *Martin v. Seabolt*, Civ. A. No. 21-906, 2023 WL 3074718, at *16 (M.D.N.C. Apr. 25, 2023) ("Plaintiff's post-discovery failure to identify the Doe Defendants warrants summary judgment as to her claims against them."); *Todd v. Lake Cnty. Sheriff's Dept.*, Civ. A. No. 08-314, 2013 WL 2156470, at *2 (N.D. Ind. May 17, 2023) ("Plaintiff does not object to Magistrate Judge Cherry's conclusion that summary judgment is appropriate on plaintiff's claims against the John Doe defendants because those defendants have not been identified.").

### 2.    Plaintiff and Vega's Deposition Testimony

Geico argues Vega's deposition testimony provides sufficient evidence for a jury to infer the driver was acting within the scope of his employment with Lyft, because Vega testified the vehicle that hit Plaintiff had passengers in the backseats and was unoccupied in the front passenger seat. (ECF No. 116 at 12–13 (citing Vega Dep. at 38, 41–42, 43).) Geico also notes that Vega described the passengers as being shocked at the accident, which it claims further corroborates that the vehicle was functioning as a Lyft vehicle. (*Id.* at 13.)

Lyft argues that although Vega saw a Lyft placard in the vehicle, Vega's testimony fails to show the driver of the vehicle was acting in the scope of his duties for Lyft. (ECF No. 122 at 6.) Lyft further claims Vega's allegations of passengers in the back of the vehicle fails to allege the vehicle was a Lyft vehicle, as the driver could have been working for many other rideshare and taxi companies. (*Id.*)

Plaintiff and Vega's deposition testimony is insufficient by itself to create a genuine dispute of material fact on whether the driver was acting within the scope of his employment with Lyft at the time of the accident. Neither Plaintiff nor Vega's deposition testimony specifically alleges the driver who allegedly collided with Plaintiff was working for Lyft at the time of the accident. Rather, Plaintiff's deposition testimony only claims he saw a lit-up placard for a rideshare company but could not recall which company it was for. (ECF No. 122-1 ¶ 7 (citing Crincoli Dep. at 63:16–19; 63:20–24.)) Vega testified that he saw both Uber and Lyft placards on the windshield of the vehicle that struck Plaintiff but could not recall whether either placard was illuminated. (ECF No. 122-1 ¶ 7 (citing Vega Dep. 37:6–9; 37:19–25.)) Notably, neither witness directly alleges a lit-up Lyft placard in the vehicle, meaning this testimony is insufficient to create a genuine issue of material fact by itself. Vega's allegation that the vehicle had backseat passengers also bears only a speculative relationship to the vehicle being under the control of Lyft, since passengers could be present in a vehicle being used by other rideshare or taxi companies, or in a private vehicle not engaged in transportation services. *See Martin*, 965 F. Supp. 2d at 527; *Roofer's Pension Fund*, 687 F. Supp. 3d at 624. Overall, even if the deposition testimony made more specific allegations regarding Lyft's control of the vehicle, the testimony would still be insufficient to defeat a summary judgment motion without further substantiation. *See Trainer*, 2024 WL 2832446, at *6; *In re Asbestos Prods. Liab. Litig.*, 2014 WL 6988692, at *2; *Fairclough v. WAWA,*

*Inc.*, Civ. A. No. 09-2153, 2010 WL 3040215, at *3 (D.N.J. Aug. 4, 2010) ("Although the plaintiff claims that her coworker reported inconsistent temperatures, she has not supported this claim, and provides the Court only with documentation of her own speculation of what temperature was reported to the manager."). These findings are also consistent with the Court's prior Opinion granting summary judgment to Uber despite the deposition testimony of Plaintiff and Vega, as the Court found that such testimony did not sufficiently contravene Uber's certification that there were no records of a matching Uber vehicle at the scene. (ECF No. 69 at 6.)

Therefore, Plaintiff's and Vega's deposition testimony is insufficient on its own to create a genuine dispute of material fact.

### 3.    GPS Data of Driver Cellphones

Lyft argues Plaintiff is unable to identify the alleged tortfeasor or the vehicle that allegedly hit him, meaning he cannot show the tortfeasor had any relationship with Lyft or that the tortfeasor was acting in the scope of that relationship. (ECF No. 115-4 at 7.)

Geico asserts that GPS evidence shows multiple vehicles matching Plaintiff and Vega's descriptions in the intersection at the time of the accident, including several vehicles which executed left turns and one which turned off its GPS transponder while traversing the intersection and did not turn it on again for an hour. (ECF No. 116 at 9–10.)

Lyft claims it did not identify any vehicles active on the Lyft platform at the time of the accident, rather, it only identified the cellphones of Lyft drivers in the area, a limitation acknowledged by Plaintiff's expert Klingen. (ECF No. 122 at 3–4.) Lyft further argues that Klingen's expert report did not necessarily identify four vehicles which made a left turn at the intersection, as the data Klingen analyzed was of driver cellphones, not of actual vehicles. (*Id.* at 4–5.) Klingen also testified his analysis did not show any of the vehicles stopped at the intersection,

thereby failing to corroborate both Plaintiff's and Vega's testimony. (*Id.* at 5.) Lyft also asserts Klingen failed to identify whether any vehicle was involved in an accident or whether any Lyft driver was in a vehicle. (*Id.*)

The GPS data showing multiple Lyft driver cellphones in the intersection between 12:00 am and 3:00 am is insufficient to create a genuine dispute of material fact because Plaintiff makes no attempt to identify the vehicle which collided with him and the data itself is limited in its detail regarding the status of the drivers. The GPS data indicates 157 Lyft drivers whose cellphones were within 100 feet of the alleged accident location sometime between 12:00 am and 3:00 am. (ECF No. 122-1 ¶ 15 (citing ECF No. 115-6 Ex. G); *Id.* ¶ 18 (citing ECF No. 115-6 Exs. G, I ¶ 6, J at 36:1–37:2.)) Plaintiff's proffered accident reconstruction expert, Klingen, also testified that the data does not show whether any vehicles stopped for any period of time after making a left turn at the intersection, whether a vehicle had any passengers, whether a vehicle was involved in an accident, or whether a Lyft driver was actually driving or in the vehicle. (ECF No. 122-1 ¶ 18 (citing Klingen Dep. at 61:14–62:7, 62:14–18, 62:19–63:1, 65:21–66:2, 67:12–25, 69:2–9, 69:10–18, 71:8–15, 73:1–5, 73:9–16.)) Geico's interpretation of this data as potentially containing a vehicle that collided with Plaintiff is speculative, as Plaintiff's proffered accident reconstruction expert has testified the data does not indicate whether any of these drivers were involved in an accident or were driving a vehicle at the time of the accident. *Id.* at 61:14–62:7, 62:14–18, 62:19–63:1, 65:21–66:2, 67:12–25, 69:2–9, 69:10–18, 71:8–15, 73:1–5, 73:9–16; *see Benitez v. JMC Recycling Sys. Ltd.*, Civ. A. No. 13-2737, 2017 WL 2815056, at *2 (D.N.J. June 29, 2017) (finding that although all reasonable inferences should be drawn in favor of the non-moving party in a motion for summary judgment, "[a]ny such inferences 'must flow directly from admissible evidence[,]' because 'an inference based upon [] speculation or conjecture does not create a

material factual dispute sufficient to defeat summary judgment.'" (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014))); *In re Asbestos Prods. Liab. Litig.*, 2014 WL 6988692, at *2; *Roofer's Pension Fund*, 687 F. Supp. 3d at 624; *Wilson v. Haas*, Civ. A. No. 11-7001, 2015 WL 3952607, at *11 (D.N.J. June 29, 2015) ("In this case, there is no evidence apart from speculation that Defendant Haas was on the phone with Lt. Durham, let alone that Defendant Haas specifically ordered that Plaintiff be stripped of all his clothing and locked in a cell while still bleeding from the head.").

Geico's attempts to further speculate regarding the types of turns the drivers allegedly made and regarding the fact that one driver supposedly turned off his GPS transponder while traversing the intersection (ECF No. 116 ¶ 18) also do not rise above the level of conjecture. Such inferences do not flow directly from the admissible evidence, which, as noted, does not indicate whether any vehicle was involved in an accident, or if any of the driver's cellphones were even present in a vehicle they were driving. (Klingen Dep. at 61:14–62:7, 62:14–18, 62:19–63:1, 65:21–66:2, 67:12–25, 69:2–9, 69:10–18, 71:8–15, 73:1–5, 73:9–16). The Court does not find such speculation raises a genuine issue of material fact. *See Benitez*, 2017 WL 2815056, at *2 (quoting *Halsey*, 750 F.3d at 287); *In re Asbestos Prods. Liab. Litig.*, 2014 WL 6988692, at *2; *Roofer's Pension Fund*, 687 F. Supp. 3d at 624; *Wilson*, 2015 WL 3952607, at *11.

The GPS data therefore fails to raise a genuine issue of material fact, as Plaintiff has failed to identify any Lyft driver involved in the collision. At this stage, Plaintiff must be able to identify the vehicle which collided with him and present some concrete evidence of Lyft's master-servant relationship with the driver of that vehicle. *See Garcia ex rel. Est. of Acosta-Garcia*, 428 F. App'x at 708–09; *Martin*, 2023 WL 3074718, at *16; *Todd*, 2013 WL 2156470, at *2. Geico's

speculations regarding the behavior of multiple different vehicles over the course of three hours fall well short of meeting this burden.

### 4.     Conclusion

Accordingly, Plaintiff has not raised a genuine issue of material fact from either the deposition testimony or the GPS data as to whether the vehicle's driver was acting under the scope of his employment with Lyft at the time of the accident. Therefore, because Plaintiff has failed to proffer evidence for either of the elements for a negligence claim against Lyft under the *respondeat superior* doctrine, Lyft is entitled to summary judgment against Plaintiff as a matter of law.

## IV.     CONCLUSION

For the reasons set forth, Lyft's Motion for Summary Judgment (ECF No. 115) is **GRANTED**. An appropriate Order follows.

Date: July 10, 2024                                    */s/ Brian R. Martinotti*_____
                                                       **HON. BRIAN R. MARTINOTTI**
                                                       **UNITED STATES DISTRICT JUDGE**